And we'll go ahead and call the first matter, United States v. Portillo-Gonzalez. Mr. Kaplan, you've argued many times before the court, you know the rules. You may proceed when you're ready. Thank you, Your Honor. Good morning. My name is Daniel Kaplan. I'm representing the appellant in this case, Praxedis Portillo-Gonzalez. I'm going to watch the clock and try to save about two minutes for my rebuttal time. Mr. Portillo's case in this appeal could be viewed as a three-legged stool. One leg of the stool is the position that the immigration judge at his removal hearing, his master calendar hearing in the year 2000, mistakenly told him that he had to have $5 on his person at the hearing in order to be considered for the relief of voluntary departure. That's the first leg of the stool. The second leg of the stool is that, assuming that is an error, that was an error, that that effectively satisfies 1326 D-1 and D-2, the first two restrictions on collateral attacks on removal orders under Section 1326-D. How does that satisfy 1 and 2? Well, under this court's precedent, that satisfies D-1 because Mr. Portillo was effectively told he could not be considered for voluntary departure. That was not a type of relief. But he had a right to judicial review. He had a right to exhaust his remedies, and he didn't do that. That's correct. And he was properly advised that he did have a right to appeal if he didn't wish to proceed. He was properly advised that he had the right to appeal. However, in cases such as R.A.F. Sardogna's, which is cited in the briefs, this court has held that where the government tells an alien no remedies are available to reap, the alien then has no reason or opportunity to better pursue remedies. No, but that's not what happened. I.J. made a mistake and then said you have a right to an appeal, and then there would be—he didn't mention the judicial review, but there would be judicial review after that. And the Supreme Court has told us that all three requirements have to be met. And if he had appealed, the mistake presumably would have been corrected. Well, under this court's precedent, again, when he's told he does not have the right, then he doesn't have effectively anything that he understands he can appeal. But is that precedent consistent with Palomar? Yes. It's consistent with Palomar-Santiago because there's nothing in Palomar-Santiago, and there's no dispute on this, that undermines or overrules or abrogates Mendoza-Lopez. And there is a very large body of this court's precedent that's built on the due process holding of Mendoza-Lopez, which says that in situations like this where an alien is told you are not eligible, you may not be considered for this relief, it's not available to you, that effectively deprives the alien of the opportunity to seek that relief. How does that deprive you of the opportunity to appeal? You make a substantive mistake in the ruling, and then you're told you have a right to an appeal. How does that deprive you of the right to appeal if there is to excuse failure to exhaust the appeal? Well, that goes to Arrieta, another of this court's precedents, where the court said an alien who is not made aware he has a right to seek relief necessarily has no meaningful opportunity to appeal the fact that he was not advised of that right. But that seems to rest on premises that are at war with Palomar, because it collapses the factors together and Palomar tells us they have to be separated. Well, I respectfully disagree with that. If you take a look at the question presented in Palomar-Santiago, it's very carefully structured to carve away any issue about what went on at the hearing, about any of the things the I.J. said to the alien about any procedural questions. The question presented in the cert petition, on which cert was granted, was whether a defendant automatically satisfies all three of the prerequisites of 132060 solely, solely by showing that he was removed for a crime that would not be considered a removable offense under current circuit law, and then to accentuate how narrowly crafted this question is, it goes on, even if he cannot independently demonstrate administrative exhaustion or deprivation of the opportunity for judicial review. So the government structured this question presented very carefully to carve out one very specific, substantive question of if someone, his offense was not an aggravated felony, that in itself, under some of this court's precedent, would be enough, no matter what happened at the hearing, no matter what the I.J. said, no matter how misleading or confusing or not the I.J.'s advisement was. And that's the sole question the court, under Rule 14 of the Supreme Court's rules, of course, they can only rule on the question presented on which cert was granted. And then to further accentuate the point, at the beginning of Palomar-Santiago, the court says, we are addressing this question, whether Palomar-Santiago is excused from making the first two of the 132060 showings. If you look at the rationale of Palomar, it says, as non-citizens, the argument goes, cannot be expected to know that the immigration judge might be wrong because non-citizens will not recognize a substantive basis for appeal to the BIA. That administrative review is not practically available under 1326D1. That's the argument it sets up before rejecting it. Doesn't that seem to be exactly the argument that you're saying survives Palomar, but it's set up and rejected? No, I disagree with that, respectfully, Your Honor. I think that this passage, too, is carefully phrased to adhere to the very, and the court itself describes it as narrow, the very narrow question on which cert was granted. They talk about substantive complexity, nothing procedural. They talk about whether that alone can render further review unavailable. And, again, there's a reference to the substance of the immigration judge's decisions being something that can be challenged on the merits. So there's several references to the isolated substantive legal question, which, under some of this court's precedent, was enough in itself. Here, and there's a footnote, as you know, and there's a footnote near the end, it says, there are hints at due process issues, and we're not addressing them because they're outside the scope of the narrow question on which we granted review. So it is not, and, again, there's the fact that Mendoza-Lopez is in no way questioned, undermined, abrogated. There's a full agreement. Mendoza-Lopez is a 100% binding due process holding of the Supreme Court on which a large body of this court's precedent rests. And so that's another reason why all of these hints, all of these confirmations that the holding of Palomar is very narrowly focused should be understood and accepted. In the Second Circuit, of course, that's the other circuit that has taken this court's approach, the 1326D. A district court there, the Gutierrez case, which I cited, has said the same thing about the limitations of Palomar-Santiago not affecting that approach to 1326D. Judge Paez, in the Santos-Santos opinion, in his separate opinion, says the same thing, that Mendoza-Lopez is still there. It's still binding Supreme Court law. And to the extent there's a lot of this court's precedent built on that foundation, that foundation is not undermined. It looks like I have a little over two minutes. Counsel, before you sit down, I would like to ask you, I just want to make sure I understand your position on your reading of Section 1229C. So A says, and I understand there was a change in the statute, A says that the Attorney General may permit an alien voluntarily to depart at the alien's own expense. And you have argued that the IJ accelerated all of that, sort of consistent with the prior statutory language. I want to know how you read A2, because you said that he could have 120 days to sort of see whether he could get the money wired from Mexico or whether he had friends or family in the United States who could come up with the $5 so that he could voluntarily depart. I don't read that 120-day period in the same way that you do. Could you explain to me how that works? Had the IJ properly instructed him here, what was the IJ supposed to do? Was he in custody? He was in custody. And was the United States obligated to keep him in custody for up to 120 days to allow him time to figure out if he could come up with the $5 to get back to Nogales? I don't believe that it was. I believe under the regulations, the IJ had discretion to set conditions on voluntary release. And perhaps detention could have been one of those conditions. But in Dada v. McKaysey, the Supreme Court said one of the benefits to the alien is not having to be in custody during that time period. So under the statute, Mr. Portillo could have been afforded as much as 120 days under this type of voluntary release. I'm sorry, you had this reference to the Supreme Court. The Supreme Court said that we would have to let him go during the Bennettsee that time?  So if the IJ said, I'll give you a week to see if you can come up with the money, does the IJ have to let him go or can he keep him in detention? I believe the IJ would have discretion, but he wouldn't have to keep him in detention. Okay. So your position is that had the IJ properly instructed him, he should have asked him do you have the means to obtain $5 now or in the immediate or in the short future? And if he'd said, if you give me a couple of days, I'm sure I can come up with the money, then the IJ should have done that? Yes, that's certainly what I would have done. That helps me. I appreciate the answer. Thank you. That clarifies things. We're going to give you two minutes, Mr. Kaplan. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Tim Corshane, and I'm from the United States Attorney's Office here in Phoenix. The defendant's appeal fails for three reasons. First, because voluntary departure was implausible for the defendant. Second, because there was no procedural error. And finally, because the defendant failed to exhaust his administrative remedies as required by 1326D and as explained in Palomar-Santiago. But I'd first like to start with the prejudice prong under 1326D-3's fundamentally unfair requirement. At the defendant's removal proceedings in December 2000, he had been in the United States for less than six months. He was 18 years old, had no known extended family in the United States, had no United States citizen children, and had not developed a relationship, a significant relationship, with a United States citizen during that time. Also, the defendant had no long-term employment in the U.S. and no long-standing business or charitable interests here. And finally, and importantly, on the negative equity scale, the defendant had been convicted for a felony in Arizona, possession of drug paraphernalia associated with methamphetamine. For that, he was sentenced to 18 months of probation. All of this occurred in the defendant's first six months, and all of these present significant negative equities which make voluntary departure implausible in this case. I would like to distinguish for a moment, Your Honor, some of the district court cases that the defendant cites to in which defendants with arguably more serious convictions received or were found to have plausible voluntary departure. In each of those, Your Honors, those cases are distinguishable because in each of those, the defendants had significantly more time, often years in the United States, and documented consistent employment in the United States, both of which would be positive equities. Here, those aren't present, Your Honors. And similarly, in July of this year, I believe one of the most similar cases that points to the fact that the defendant would not plausibly receive voluntary departure in this case is this court's decision in Santos-Santos. Just to illustrate the point there, it would be important to look at the positive equities in that case. The positive equities there is that the defendant in Santos-Santos worked for several years in the United States, had a significant romantic relationship with a United States citizen, and had significant existing family ties in the United States. And his negative equity was a felony conviction for which he did a little less, or about six months in prison, Your Honor. The court there found prejudice was implausible. What's the standard of review we would apply to this question of prejudice? It would be de novo, Your Honor. So for those reasons, the defendant's appeal fails first. And it should be noted that the defendant must succeed on all three to succeed in his appeal. He can't hit one of them. All three have to be met for the defendant. The second reason the defendant fails is because there was no procedural error. The immigration voluntary departure must be at the alien's own expense.  But he had to have the money right on the spot, or he wasn't going to get it. And that doesn't seem to line up with the law, does it? Well, important in this case, Your Honor, is that the defendant was in ICE custody at the time. And so I believe my opposing counsel correctly stated that it was within the immigration judge's discretion, let's say, that the defendant had requested time so that I could come up with it. The immigration judge would then have to make a decision as to whether or not to keep the defendant in ICE custody or to release him. Given the facts present to the immigration judge at the time, those negative equities, the limited time that it takes. Opposing counsel has suggested that the judge was working from an old script. Do you admit that? It looks like it. Does the government have an opinion on that? To a degree, Your Honor. But I would disagree with the premise of that old script as to the effect of in rare galas campos. Yeah, but let me just hold you to that question. It certainly feels like the IJ was accustomed to telling people that if they didn't have the money, they would be taken back across the border at the government's expense and thus would not get voluntary departure. And so he didn't soften this in any way, in any sort of logical way that says, do you have the $5 on you today or do you think you can come up with it in a very short period of time? Which would have been a reasonable way of explaining the new statute. No, it does not appear that he softened it in any way. It really does look like he was working off an old script. Understandable.  It does appear that he did not. And I do like the court's language, soften, soften that requirement, Your Honor. But it was still a statutory requirement. And for those reasons, the government believes that there was no procedural error. But if the court does disagree with that, there is a third reason that the defendant fails. And it's as was discussed previous. It is the effect of Palomar Santiago makes it so that the defendant's appeal fails. The defendant in this case was specifically advised of his available administrative remedies, which was to appeal his decision to the Board of Immigration Appeals. That advisement was specific, it was particular, and it was rather thorough. In that advisement, the immigration judge went specifically through what would occur if the defendant chose to appeal a decision. He said that the decision would not be final, that the defendant would have time to handle that appeal. And he was frank with them, that the immigration judge wouldn't be offended if the defendant appealed his decision. How would that work? How would it have worked if he had taken the appeal? So he would have filed with the BIA, and then he would have sat there for months and 120 days? How would this work logistically? I believe at the time he would have remained in ICE custody. That would have been a decision for the immigration judge. He could have released him. But yes, he would have had time, some time, to handle that appeal. And it's not clear from the record how long he would have had. But he would have had that time to handle the appeal. And what's important in this context, especially looking at Palomar Santiago, is that it was in the advisement, that he was advised of these possibilities, and that he was advised as to how properly advised of his appellate rights. What was the sequencing on that? So did the IJ say, if you don't like my decision today, you can appeal it to the BIA, I won't be offended? And then did he ask? Did he ask them if they wish to appeal? Sure. So first he advised the defendant of his right to appeal. And then told him that he had to have the $5 for voluntary departure after Portillo told him that he didn't want to appeal? I believe it was sandwiched. I think he first mentioned that voluntary departure was available and it would require the $5. He did the appellate advisement. And then again, before the individual colloquies, with the individuals in the proceedings, went over voluntary departure again. And again mentioned that they would need the $5. But what's important is that during the individual colloquy, that was when the immigration judge asked the defendant if he wished to appeal. First the immigration judge found that he was removable, asked if he had the $5. The defendant said no. And then subsequently, and individually, asked him. So he asked him about the appeal after he had told him that if he didn't have the $5, they would ship him back? Correct, Your Honor. Okay. And it was only at that final moment after the immigration judge pronounced his decision that he asked if the defendant wished to appeal his decision. And the defendant said no. Clearly waiving that issue and bringing us into the realm that Palomar Santiago has now put us in. I think it's also important to note that if this court accepts the defendant's take on Palomar Santiago, that would create a direct circuit split with the Sixth Circuit. Specifically looking at the Sixth Circuit's decision in the United States versus Flores-Perez, which can be found at 1F4454. That case looked specifically at a due process error in an immigration removal proceedings and applied Palomar Santiago to say that the argument that Palomar Santiago didn't apply just doesn't hold water because of Palomar Santiago's textual interpretation and specific language of any collateral attack, which would cover substantive and procedural errors. For these three reasons, Your Honor, the government believes that the defendant's appeal fails and that this court should affirm the district court's decision. Thank you. Just a few quick points, Your Honors. There can't be a new circuit split with the Sixth Circuit because the Sixth Circuit has never had the same doctrine as this court about 1326D. So there's nothing new about any split there. One quick point, the government refers to methamphetamine, and maybe I'm missing something and I don't think it's significant, but I didn't see anything in the record that confirmed the type of drug involved in the drug offenses. So I'm not sure where the specificity of methamphetamine is coming from in the record. Getting back to the points that the panel was raising earlier, as far as Palomar Santiago, there was a very compelling reason for the government and the Supreme Court to have limited the scope of the question addressed and presented in Palomar Santiago the way it did, which is that really there's practically infinite ways an immigration judge can mislead and confuse and mistakenly advise aliens at a hearing. And the idea that in addressing one case in one limited set of facts, the entire scope of all those things could be in one fell swoop eliminated or redrawn is too extensive and would not be something the lower courts would be able to follow. So it was very prudent for the court and the government to limit that question as they did. And under this court's precedent, Miller v. Gami and Lehrer v. Bullock, there are some further elaborations on Miller v. Gami. It's not enough for there to be some tension or for a Supreme Court opinion to cast doubt on circuit precedent. It has to be something that cannot possibly be reasonably harmonized, something that this court cannot keep doing what it's been doing without running afoul of the Supreme Court opinion. And that's not the case here, both because of Mendoza-Lopez and also because of the statutory reference to the word available, which of course introduces another avenue of analyzing the way an alien might have been misled at the hearing. And this court's precedent in Nunez and several other opinions that I cited have applied the same type of procedural constraints and protections in the prisoner litigation context that have been for a long time applied by this court in the deportation context. If there are no further questions, thank you, Your Honors. Thank you, Mr. Kaplan. Thank you both for your briefing and argument in this case. This matter is submitted.
judges: BYBEE, OWENS, COLLINS